```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA

            v.                        18 CR 15 (AKH)

GEORGE TROPIANO,
                                      Sentence
            Defendant.

------------------------------x
                                      New York, N.Y.
                                      March 29, 2019
                                      12:10 p.m.
Before:

     HON. ALVIN K. HELLERSTEIN

                                      District Judge




        APPEARANCES


GEOFFREY S. BERMAN
     United States Attorney for the
     Southern District of New York
JASON M. SWERGOLD
     Assistant United States Attorney


DAVID BERTAN
JACQUELINE E. CISTARO
     Attorneys for  Defendant
```

1         (Case called)
2         MR. SWERGOLD:  Jason Swergold for the United States.
3         THE COURT:  Good afternoon.
4         MR. BERTAN:  David Bertan for Mr. Tropiano, your
5  Honor.  I am assisted at counsel table by Jacqueline Cisdaro as
6  part of the Southern District internship program.
7         THE COURT:  Good morning.  Thank you for taking on
8  that program.
9         Good morning, Mr. Tropiano.  It is my duty to sentence
10 you today, Mr. Tropiano.  I start with the pre-sentence
11 investigation report.  Have you seen it?
12        THE DEFENDANT:  Yes, your Honor, I have.
13        THE COURT:  Have you reviewed it with Mr. Bertan?
14        THE DEFENDANT:  Yes, I have, your Honor.
15        THE COURT:  Mr. Bertan, are there any factual errors
16 in the report?
17        MR. BERTAN:  None to the report, your Honor.
18        THE COURT:  Mr. Swergold, does the government have
19 any?
20        MR. SWERGOLD:  No, your Honor.
21        THE COURT:  I find the facts as set out in the
22 pre-sentence investigative report.
23        Mr. Tropiano's plea was taken by Judge Cott on
24 December 12, 2018, and approved by me December 26, 2018.
25        The next step is to deal with the guidelines.  They

1   are a little complicated.  The base calculation is 19 under
2   2E1.1.  The particular crime of extortion is covered by section
3   2B3.2(c).  That gives a base level of 18, plus an upward
4   adjustment of 2 because of the threat to bodily harm, plus 3
5   because the amount demanded was more than $500,000 and less
6   that $4,500,000, creating a net offense level of 23.  Because
7   there was timely acceptance of responsibility, 3 levels are
8   taken off, which brings us to level 20 as the net offense
9   behavior level.
10          Mr. Tropiano has 4 criminal history points, putting
11  him into category III under the sentencing guidelines criminal
12  history.  A level of 20 and a category of III gives him a
13  sentencing range of 41 to 51 months followed by 1 to 3 years of
14  supervised release.
15          Do I have it right, Mr. Swergold?
16          MR. SWERGOLD:  Yes, you do, your Honor.
17          THE COURT:  Mr. Bertan?
18          MR. BERTAN:  Yes.
19          THE COURT:  I so find.
20          Mr. Tropiano is 69 years old.  He is a citizen of the
21  United States.  I'll leave the rest to counsel.  Mr. Bertan, do
22  you want to tell me about your client?
23          MR. BERTAN:  Briefly, your Honor.
24          THE COURT:  I have your submission.  I read it.  I
25  have the government's submission, and I've read it.  Please

1  feel free to tell me whatever you think I should know.
2          MR. BERTAN:  As outlined in my submission, your
3  Honor --
4          THE COURT:  I know.  Go ahead.  Your client would like
5  to hear it.
6          MR. BERTAN:  One of the issues is his current health.
7  He is, as you noted, 69 years old.  He has some medical issues.
8  Based on those facts alone, I think there should be some
9  leniency regarding his sentence.  I have laid that out pretty
10 clearly in the letter.  If there is anything in the letter you
11 would like me to ask you about, I'd be happy to answer it.
12         THE COURT:  No.
13         MR. BERTAN:  What I would like to talk about and one
14 of the things that always gives me pause when it comes to
15 advocating on behalf of a client at sentencing is the ask: what
16 is the right number?  Where do I come out and what is it that I
17 request on behalf of my client?  I had a little bit of help in
18 this case because probation gave a recommendation of 24 months.
19 But it is still a little complicated to decide what is the
20 right amount.
21         As I looked through the letters in support that you
22 have, I realized I got a lot of help from the people in Mr.
23 Tropiano's life.  It is not just the people who he has dealt
24 with.  What I think you see in those letters is he has had an
25 impact on the people in his community, a very positive impact

on the people in his community over the course of his adult life.  He has coached football and baseball and has instilled in his players an attitude of respect for authority, respect for your competition, respect for the sport, and respect for yourself in giving 110 percent.

You have letters from family members whose kids were coached by him which talk about the impact that he has had on their children.  You have letters from Mr. Laino, if I pronounced that correctly, who talks about the impact that Mr. Tropiano's coaching and guidance had on him.  Mr. Waleed talks about it as well.

When you look at those actions and you see who Mr. Tropiano is, not just as some numbers in a guideline calculation or some objective biographical facts in a probation report, there is more to him than which this case represents.  One of the things that struck me as I learned more about Mr. Tropiano was, I have seen this and I'm sure the Court has seen it, where somewhere between plea negotiations starting and sentence date, someone starts getting involved in charity work, they start doing good things for their community.  As I called it in my letter, that's just surface paint.  That's not what we have here.

We have a man who has been involved in his community helping, giving back a lot over the course of his life.  He has worked with the teams.  He has worked with the Teddy Atlas

1  Foundation.  The best line that I saw in all of the letters was
2  from Denis Hamill when he talks about the daily mitzvahs that
3  Mr. Tropiano does.  The facts of the case are clear.  Probation
4  lays it out.  I'm sure the government will talk about it.
5  There is more to him than that.
6      What he has done with his community, what he has done
7  with his own children, the way he has raised them, how his
8  children have affected him in his life I think merits some
9  consideration.  I don't want to sit and talk about his age.  I
10 don't want to stand here and discuss his health issues.
11     THE COURT:  It's hard to talk about age with me.
12     MR. BERTAN:  It's all about perspective, your Honor.
13 I understand my audience.  But looking at what he has done in
14 his life is how you can craft the appropriate sentence for Mr.
15 Tropiano.  He is going to be stepping into jail.  I think a
16 year and a day is the appropriate amount of time he should
17 spend there.
18     If you have any questions, I'm happy to answer them.
19     THE COURT:  Your argument is eloquent and your letter
20 is eloquent.
21     MR. BERTAN:  Thank you, your Honor.
22     THE COURT:  But you say nothing about the crime.  I am
23 sentencing him for the crime he committed.
24     MR. BERTAN:  Your Honor, my focus in this is to show
25 you who he is other than as a defendant.  The crime itself, the

1  facts are laid out. We don't object to them. Probation makes
2  it clear. I'm sure the government will discuss it in detail.
3        He is truly remorseful for what he has done. I don't
4  know if you noticed this, but family is not here. He made a
5  conscious decision not to have his family here because he is
6  tremendously embarrassed about what he has done here. He is
7  very remorseful about it. His letter makes that clear. He did
8  something bad. He committed a crime. He admitted to it, he
9  accepted responsibility. I don't know what more there is to
10 say about it.
11       THE COURT: The crime was a rather nasty crime. It's
12 visiting a number of times a person who had a judgment of money
13 owed to him and in effect saying to him if you don't reduce
14 your judgment substantially, there will be something to be paid
15 to you, and that is say hello to your dad. It is clear from
16 the circumstances that his dad had been dead for a number of
17 years and was killed in gang violence, which is what Mr.
18 Tropiano threatened.
19       MR. BERTAN: To make it clear, I don't believe he died
20 as a result of gang violence.
21       MR. SWERGOLD: He didn't die, your Honor. He was shot
22 in the head but he survived. Just so the record is clear.
23       THE COURT: All right.
24       MR. BERTAN: I don't believe there is any question
25 that whatever that incident was, Mr. Tropiano was not involved

1  in that.

2  THE COURT:  I didn't say he was.  But it is a threat.
3  He's telling the fellow who he is extorting that if you don't
4  do what I tell you to do, you're going to be shot in the head.

5  MR. BERTAN:  Your Honor, I don't know that I would
6  characterize it as shot in the head.  There is an implied
7  threat.  But again I would note there was no overt threat,
8  there was no actual violence, there was no weapon used.

9  THE COURT:  That's true.  If there had been, this
10 crime would have been more serious.

11 MR. BERTAN:  We would have been dealing with a
12 different guidelines calculation.

13 THE COURT:  Much higher.  Much, much higher.  And this
14 is not the only such incident.  He went to jail in 2013 for an
15 incident where he punched and kicked the victim in the head and
16 face, also an extortion.  He was on parole at the time.  This
17 was not so many years ago.  So it is hard to say, as you say,
18 it is aberrational.  It is not aberrational.  It is a way of
19 life.

20 MR. BERTAN:  Your Honor, if I may, with regard to the
21 incident, the assault, that stems from an attack on Mr.
22 Tropiano's grandson.  The victim in that case hit his grandson
23 and he hit the person back.  That had nothing to do with
24 extortion in any way.

25 THE COURT:  Punching and kicking in the face is

1  violent, is more than just defense.  You have outlined it very
2  well and you sum it up in your first paragraph.  Mr. Tropiano
3  is a father and he has been a father to his children.  You say
4  he taught them good things.  But what kind of a model is he
5  when he engaged in bad things?  He is a husband.
6          MR. BERTAN:  Your Honor --
7          THE COURT:  Yes.
8          MR. BERTAN:  There are times when the lesson is do as
9  I say, not do as I do.  I think in this case that lesson was
10 imparted to his family and, by extension, to his community.
11 I'm asking that you take that into consideration as you decide
12 what the appropriate sentence will be.
13         THE COURT:  Thank you, Mr. Bertan.
14         MR. BERTAN:  Thank you.
15         THE COURT:  Mr. Swergold.
16         MR. SWERGOLD:  Thank you, your Honor.
17         With respect to the crime in this case, your Honor is
18 correct, it is a particularly nasty crime.  Your Honor actually
19 had the benefit of listening to the victim of that crime
20 because he testified in the Cammarano and Zancocchio trial.
21 That was Mr. Grzic.  The facts are set forth in the PSR, and I
22 think they do speak for themselves in terms of the level of
23 fear instilled in this victim.
24         He went to the police.  He hired a private bodyguard.
25 He relocated his family because he really was in fear for his

1  life from the threats made by Mr. Tropiano.  These were not

2  threads in isolation.  This was part of the racketeering

3  activity of the Bonanno organized crime family.

4              THE COURT:  Of which he was an acting captain.

5              MR. SWERGOLD:  In which he was a leader, had a

6  leadership position at one point as an acting captain.

7              What really jumps off the page here, your Honor, both

8  from Mr. Bertan's arguments and from what actually happened in

9  this case is that members of La Cosa Nostra think they can

10 operate in a system that runs parallel to what the law actually

11 requires.  Mr. Tropiano has done this time and again.  Even if

12 he is telling people in his community to do the right things,

13 telling his kids to do the right things, he is not doing that.

14             He lied to a grand jury to protect members of La Cosa

15 Nostra and their illegal activities.  Mr. Grzic had a valid

16 court judgment, and La Cosa Nostra stepped in and said that's

17 not how we settle things in court, we do it our own way,

18 through intimidation and threats of violence.

19             There has to be a punishment in this case that sends a

20 message that this is serious conduct that needs to be punished,

21 that society does not tolerate people playing in their own set

22 of rules.  There is one set for everybody to abide by, and that

23 has to happen in this case.

24             THE COURT:  I'm not sure we need to reach that far,

25 Mr. Swergold.  Just taking the man as he is, when he was a kid

1  of 18, according to the PSR, he broke and entered the
2  unoccupied home in Brooklyn, he and four others.  This was not
3  a burglary.  He destroyed the walls and the stairway.  That is
4  the kind of thing that you do when you want to get back at
5  someone to teach a lesson to someone.  It is what the gang
6  does.  He was granted status as a youthful offender in that
7  case.
8          Then there was this gas station incident where
9  Tropiano and another punched and kicked the complainant.  It's
10 a pattern in Mr. Tropiano's life as the enforcer.  Without
11 looking into the overall system of comparative law, I think we
12 have enough to consider Mr. Tropiano's punishment.
13         MR. SWERGOLD:  One point I would make on those prior
14 cases, your Honor, as well as the more recent assault in 2013,
15 Mr. Bertan is right, that particular assault did not have
16 anything to do with La Cosa Nostra.  It was a personal dispute.
17 Whatever he did after it in terms of whether --
18         THE COURT:  It shows.
19         MR. SWERGOLD:  You're right, it shows the way he deals
20 with problems.  I can't speak to these much, much, much older
21 cases from the '60s and the '70s, but one thing that is clear
22 is that whenever he gets in trouble, he doesn't get punished
23 for it, he doesn't go to jail.  I think a guidelines sentence
24 is appropriate here to punish him, deter him, and to deter
25 other members of La Cosa Nostra because the Mafia sees going to

1    jail as a cost of doing business.  You get a year and a day,
2    that is nothing.  That is no cost at all.
3              THE COURT:  Thank you, Mr. Swergold.
4              Mr. Tropiano, do you want to address me?
5              MR. BERTAN:  Your Honor, if I may?
6              THE COURT:  Sure.
7              MR. BERTAN:  Very quickly.
8              THE COURT:  Sure.
9              MR. BERTAN:  First of all, the cases that you referred
10   to in the probation report go back to 1967 and 1968.
11             THE COURT:  They are old.
12             MR. BERTAN:  They are very old.
13             THE COURT:  I recited it because it shows a way of
14   life.
15             MR. BERTAN:  Your Honor, I respectfully would differ
16   with that.  If you look at that, you go from 1967 with nothing
17   until 2013, when he defends his grandson.  Early '70s, your
18   Honor, you're talking almost 40 years.
19             Secondly, I would note, and I'm a little reluctant to
20   talk about age, at Mr. Tropiano's age a year and a day is not
21   nothing.  It is a substantial sentence.  I would like the Court
22   to keep that in mind given his age and his physical condition.
23             THE COURT:  I understand.  Tell me about the physical
24   condition.
25             MR. BERTAN:  There isn't anything to add other than

1  what I wrote in the letter. He takes a number of medications
2  for his heart trouble. He just completed a detox program so he
3  could stop taking the prescription oxycodone. As part of my
4  application, at the end I was going to ask that he be
5  designated to the RDAP facility to help him continue with that.
6      THE COURT: I'll do that.
7      MR. BERTAN: He is in pretty much constant pain from
8  his injuries. That is what the oxycodone was intended to help,
9  and it turned into something else.
10     Thank you.
11     THE COURT: Mr. Tropiano, do you want to address me?
12     THE DEFENDANT: Yes, your Honor. Some of the things I
13 did in the past when I was young, I was trying to get the
14 attention of my father. It didn't work.
15     THE COURT: You were trying to do what?
16     THE DEFENDANT: To get the attention of my father to
17 be a father figure. That didn't work. I want to thank you for
18 assigning David to my case. And I'm at your mercy.
19     THE COURT: Thank you, sir.
20     THE DEFENDANT: Thank you.
21     THE COURT: It's always difficult to sentence a
22 person. The considerations I have to follow under the statute
23 are not clear and they conflict with one another. The best I
24 can, I'll go through them and deal with the custodial part of
25 the sentence that I wish to impose.

            The first aspect, reflecting the nature and
circumstances of the offense, there are two main
considerations: the nature and circumstance of the offense and
the history and characteristics of the defendant.

            As to the offense, the punishment has to reflect its
seriousness.  Threatening others is very serious.  We can't
enjoy our families, our liberties, unless we are secure.  If
people threaten us so we can't enforce what is justly ours or
enjoy what is justly ours, that's an enormous impingement on
the freedom and liberty of another person, not to speak of the
endangerment to life and health.  The crime is very serious.

            I have to promote respect for the law.  What will be
the respect if someone engaged in such conduct as part of a
racketeering enterprise gets off with a year and a day or
something like that, as Mr. Bertan suggests?  I think people
will lose respect for the law.

            I have to provide just punishment for the offense,
which in effect meets what I have just been talking about.

            Another consideration is to afford deterrence to
future conduct not only of Mr. Tropiano but also of his friends
and colleagues and others.  The sentence has to be something
that others will pay attention to.

            And to protect the public from further crimes of the
defendant.  I would like to think that at 69 Mr. Tropiano's
life of crime is finished, but one does not know.  The other

factors are more important and cogent here.

I also need to consider the history and characteristics of the defendant. It's mixed. He's got a history of criminal conduct. He also has a history of good works in his community, of responsibility for his family, in the normal and mundane activity being a normal and contributing citizen.

Putting all this together, I think the guidelines have it right. I have considered the recommendation of probation for 24 months, but I don't think it is well taken. I think a guidelines sentence is appropriate. I consider the good works that Mr. Bertan has cited as pushing me towards the bottom of the guidelines. I think a sentence of 41 months is appropriate, followed by 3 years of supervised release.

There is only one count, right, Mr. Swergold?

MR. SWERGOLD: One count that he has pled guilty to, yes, that's correct.

THE COURT: Do you want a recommendation where it should be served, Mr. Bertan?

MR. BERTAN: Your Honor, the recommendation would be somewhere within the metropolitan area at a facility that has the RDAP program.

THE COURT: RDAP, what is that?

MR. BERTAN: Camp Butner, which is in North Carolina would knock out my request for keeping it local, but it does

1  have the RDAP program.

2  THE COURT: It does not?

3  MR. BERTAN: It does.

4  THE COURT: How to you spell RDAP?

5  MR. BERTAN: R-D-A-P. It is also the Bureau of
6  Prisons medical facility.

7  THE COURT: Yes, I'm familiar with it. The
8  recommendation is to confine Mr. Tropiano at Camp Butner so he
9  can take advantage of the RDAP procedure and take care of his
10 medical ailments. If that is not available, the secondary
11 request is for something proximate to the community here so it
12 would promote visits by his family.

13 Is there forfeiture in this case, Mr. Swergold?

14 MR. SWERGOLD: Your Honor, the government is not
15 seeking forfeiture.

16 THE COURT: There is restitution in this case.

17 MR. SWERGOLD: Your Honor, so the record is clear, the
18 government has reached out to a lawyer who was representing Mr.
19 Grzic, the victim in this case, who helped facilitate him
20 coming back and forth to testify. He was advised of the
21 proceedings. He did not want to be any further involved. I
22 think he wants to close that chapter.

23 THE COURT: So there is no restitution?

24 MR. SWERGOLD: That's correct.

25 THE COURT: As to the 3 years of supervised release, I

1   impose the conditions suggested by probation, namely, the

2   mandatory conditions set out at the bottom of page 31 of the

3   PSIR.

4            With regard to testing, the letter from Dr. Savarese

5   suggests that I should have this testing.  Do you agree, Mr.

6   Bertan?

7            MR. BERTAN:  Your Honor, I think the standard testing

8   within the bounds of supervised release would be sufficient.

9   He is going to be tested within a few days of his release and

10  then randomly thereafter.

11           THE COURT:  That's what it is.  He must submit to one

12  drug test within 15 days of release from imprisonment and at

13  least two periodic drug tests thereafter as determined, it says

14  by the Court, but I would say as determined by the probation

15  office.  And Mr. Tropiano must cooperate in the collection of

16  DNA as directed by the probation office.  There are others, 13

17  standard conditions, spelled out on pages 32 and 33.  I impose

18  them.

19           There are special conditions.  Submission to a search

20  as described in the center of page 33 is imposed.

21           Since there is no fine which I'm imposing and no

22  restitution, there is no need to provide the probation officer

23  with access to any requested financial information, and I

24  decline to order that.  Supervision will be by the district of

25  Mr. Tropiano's residence.

1           There is a mandatory special assessment of $100.

2           I think we've touched all the bases.  Am I right, Mr. Swergold?  I have to advise him of his appellate rights

4           MR. SWERGOLD:  That and, your Honor, the government moves to dismiss the open counts.

6           THE COURT:  Not yet.  Is there anything up to this point that I have missed, Mr. Bertan?

8           MR. BERTAN:  No, your Honor.  My client has just informed me that he believes Ft. Dix also has the RDAP program.

10          THE COURT:  The recommendation is the closest facility to New York that has the RDAP program.

12          MR. BERTAN:  Thank you.  I would also like to address the surrender date.

14          THE COURT:  I didn't get there yet.

15          The punishment I read out is so ordered.

16          When do you want Mr. Tropiano to surrender?

17          MR. BERTAN:  May 1st, your Honor.

18          MR. SWERGOLD:  The government has no objection, your Honor.

20          THE COURT:  What day of the week is that?

21          THE CLERK:  Wednesday.

22          THE COURT:  May 1 at the facility designated by the Bureau of Prisons.

24          Mr. Tropiano, I advise you that under the Constitution you have a right to appeal.  You should discuss with Mr. Bertan

whether or not you wish to file a notice of appeal.  If your client wishes that you do, Mr. Bertan, I instruct you to do so on a timely basis.

    MR. BERTAN:  I will.

    THE COURT:  If you can't afford a lawyer, Mr. Tropiano, a lawyer will be assigned free of charge.

    THE DEFENDANT:  Thank you.

    MR. SWERGOLD:  Your Honor, the government moves to dismiss the open counts against Mr. Tropiano in the S2 indictment and to dismiss the two underlying indictments against Mr. Tropiano.

    THE COURT:  So ordered.

    That concludes the sentencing.  I wish you good health and good luck, Mr. Tropiano.

    (Adjourned)